UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Public Integrity, | \| |
| | \| |
| Plaintiff, | \| |
| | \| |
| v. | \|   Civil Action No. 18-1173 (ABJ) |
| | \| |
| U.S. Department of Energy, et al., | \| |
| | \| |
| Defendants. | \| |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the Center for Public Integrity, moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and opposes Defendants' Motion for Summary Judgment. Plaintiff's Memorandum of Points and Authorities, Statement of Material Facts as to Which There Is No Genuine Issue and a proposed Order accompany this motion.

Undersigned counsel certifies that the attached exhibit is an accurate copy of Document 2, as produced by the U.S. Department of Defense to Plaintiff during this litigation.

Respectfully submitted,

         /s/
Peter Newbatt Smith
D.C. Bar #458244
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006-2606
202-481-1239
psmith@publicintegrity.org

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Public Integrity, | \| |
| Plaintiff, | \| |
| v. | \| Civil Action No. 18-1173 (ABJ) |
| U.S. Department of Energy, et al., | \| |
| Defendants. | \| |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, to secure the production of certain unclassified agency records. In response to FOIA requests, Plaintiff has received 16 responsive documents, with redactions, while Defendant U.S. Department of Energy ("DOE") withheld one document in full.

Plaintiff does not contest the adequacy of Defendants' search for responsive records. As detailed below, Plaintiff objects to many of DOE's redactions from these unclassified documents and to the withholding of Document 17. In some instances, DOE has redacted information about the U.S. government's consultations with other countries, even though Defendant U.S. Department of State ("State") did not recommend making any redactions. In other instances, the U.S. Department of Defense ("DoD"), to which the 16 documents were also referred, made additional redactions, but Defendants have not provided the Court with justifications for these redactions.

## **PLAINTIFF'S FOIA REQUEST**

At the direction of Congress and the President, the Department of Defense in 2017 began an updated Nuclear Posture Review ("NPR") to determine the role of nuclear weapons in U.S. security strategy. DoD reported the results of this NPR in February 2018 (the report and some related materials are available from DoD online at https://dod.defense.gov/News/SpecialReports/2018NuclearPostureReview.aspx). In 2017, through its own investigation, Plaintiff learned that several national laboratories, which are operated by contractors on behalf of the Department of Energy, had offered or were offering information to DoD relevant to the NPR. Plaintiff is not aware that DoD formally requested such input from the national laboratories.

On September 21, 2017, Plaintiff requested from DOE pursuant to FOIA "all reports … produced by national laboratories for consideration in the upcoming Nuclear Posture Review." *See* Supplemental Complaint, Docket No. 9, at ¶ 7; and Declaration of Delilah Perez, Exhibit A, Docket No. 20-4.

On May 14, 2018, DOE notified Plaintiff that it had located 17 documents responsive to the request and was withholding document 17 in its entirety pursuant to Exemption 5. DOE referred the other 16 documents, amounting to 250 pages, for review by Defendant State, because they "contain information which may have an adverse impact on United States diplomatic relations." Declaration of Eric F. Stein, Exhibit 1, Docket No. 20-8.

On May 17, 2018, Plaintiff appealed the withholding of document 17 to DOE's Office of Hearings and Appeals. On May 29, 2018, the Office of Hearings and Appeals denied Plaintiff's appeal.

On May 18, 2018, Plaintiff initiated this lawsuit.

On August 3, 2018, State completed its review of the 16 documents and determined that it had "no objection to the release of Department of State equities." However, State recommended that DOE refer the documents to the Department of Defense for review, and DOE did so.

On November 13, 2018, DoD produced the 16 documents to Plaintiff, with significant redactions. The documents produced are entirely unclassified, and Documents 2 through 16[1] each carry an identical explanation and disclaimer on the first page, stating:

> This paper was prepared as background reading for officials participating in the 2017 Nuclear Posture Review (NPR). It was produced by an informal study group consisting of technical experts from the three NNSA national laboratories and is one of a set of such background papers on topics of likely importance to the 2017 NPR where the technical expertise of the NNSA national laboratories is relevant. This paper does not provide policy recommendations. As an unclassified background paper, it is intended to help frame key issues, assemble relevant background information, and sketch out alternative pathways forward. A more comprehensive discussion of these issues at the classified level would be beneficial. The views expressed here are those of the study group only and do not represent official positions of the NNSA national laboratories as institutions, nor of any particular individual participant in the study group.

See, e.g., Document 2, "The Future of the Nuclear Stockpile," which accompanies this motion as an exhibit.

## ARGUMENT

### I.   Standard of Review

Summary judgment is appropriate when there is no genuine issue as to the material facts, and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[1] Document 1, filed with the Perez Declaration as Exhibit B (Docket No. 20-5), is exceptional in lacking this language. DOE has withheld Document 17 in full, so its contents are not known to Plaintiff.

56; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A court reviews agency handling of a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B).

In a case brought under FOIA, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); see also *Electronic Privacy Information Center v. Dep't of Homeland Security*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005). While FOIA includes exemptions from disclosure, "these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

## II.     FOIA Exemption 5 Does Not Allow Defendant DOE's Redactions

Exemption 5 of the Freedom of Information Act exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C § 552(b)(5). DOE has asserted the deliberative process privilege. Material withheld under this privilege must be "both predecisonal and deliberative." *Wolfe v. Dep't of Health & Human Services*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (citing *EPA v. Mink*, 410 U.S. 73 (1973)).

In addition, the FOIA Improvement Act of 2016 amended FOIA to provide that "[a]n agency shall ... withhold information under this section only if … (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A). Applying this provision to Exemption 5, courts have concluded that "[a]bsent a showing of foreseeable harm to an interest protected by the deliberative process exemption, the documents must be disclosed." *Rosenberg v. Dep't of Defense*, 342 F.Supp.3d 62, 78 (D.D.C. 2018) (quoting

*Ecological Rights Found. v. FEMA*, No. 16-cv-05254, 2017 WL 5972702 at 6 (N.D. Cal. Nov. 30, 2017)).

### A.  The Documents at Issue Are Not Deliberative in Nature

At least 15 of the 17 responsive documents carry a disclaimer on the first page stating, "This paper does not provide policy recommendations. As an unclassified background paper, it is intended to help frame key issues, assemble relevant background information, and sketch out alternative pathways forward." *See, e.g.*, Document 2. The documents provide factual background, rather than policy recommendations, and as such are not deliberative. See, e.g., *EPA v. Mink*, 410 U.S. 73, 89-92 (1973). If mere "background" memos were sufficient to invoke Exemption 5, the narrow "deliberative process" exception to production under FOIA would swallow the rule.  Indeed, absent stated "policy recommendations" in the reports at issue here, there was nothing for the DoD to deliberate over that would conceivably justify withholding them.

### B.  Defendants Have Not Shown Any Foreseeable Harm from Disclosure

#### 1.  No Foreseeable Harm to Foreign Policy Interests

The government's sole argument for NNSA's Exemption 5 redactions is that "the information reveals the Government's deliberative process with United States allies on sensitive policy matters whose release could undermine the Government's ability to engage in future deliberations on policy matters." Defendants' Memorandum (Docket No. 21-2) at 9. However, this argument is wholly undermined by State's conclusion that there was no basis upon which to redact any of the documents requested. After reviewing Documents 1 through 16, Defendant State told Defendant DOE, "[W]e have no objection to the release of Department of State equities." Declaration of Eric F. Stein, Exhibit 5 (Docket No. 20-8, at 10). Without question, the

State Department is the agency in the best position to evaluate whether the release of documents will reveal the United States' "deliberative process with [its] allies on sensitive policy matters" and "undermine" the country's ability to "engage in future deliberations on policy matters" with its allies. By electing not to redact any of the information sought, the State Department implicitly rejected the very arguments at the heart of the government's position here.

Relations with United States allies are within the scope of "Department of State equities," but State did not express any concern about release of this information. If State saw no harm in making this information public, the Court should likewise find that there is no foreseeable harm.

It is significant that each of the 17 reports is unclassified. If "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," it could properly be classified (under Executive Order 13,526) and withheld under FOIA Exemption 1. The Court should not allow Defendants to use Exemption 5 as a "backdoor" method of restricting information that does not meet the standards for classification and thus does not involve state secrets.

Document 17 was not reviewed by State, but the same considerations apply. It does not contain classified information. Therefore the Court should conclude that its release would not cause foreseeable harm to national security.

2. **No Foreseeable Harm to Candid Discussion**

Typically, in considering withholdings under FOIA Exemption 5, courts examine whether the prospect or possibility of disclosure is likely to inhibit the ability of the agency to receive frank and candid advice. Long before the "foreseeable harm" standard was codified in statute, the D.C. Circuit explained that "[t]o test whether disclosure of a document is likely to adversely affect the purposes of the [deliberative process] privilege, courts ask themselves

whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency ….." Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (1980).

There is no such risk in this case. The reports present themselves as created by committee. Most of them state explicitly that "[t]he views expressed here are those of the study group only and do not represent official positions of the NNSA national laboratories as institutions, nor of any particular individual participant in the study group." Individual contributors know that, even if they were to be identified, they would not be expected to take responsibility for every paragraph in the report, nor even any paragraph in the report.

    3. **No Substantial Risk of Public Confusion**

Defendants have argued that release of the redacted information will "cause confusion to the public … about U.S. policy toward other countries." Defendants' Memo at 9, citing Perez Decl. ¶¶ 11-13. The reports make clear on their faces that they "do not represent official positions of the NNSA national laboratories," much less the policies of the U.S. government. They also state that they "do[] not provide policy recommendations," much less set policy. Plaintiff is not confused on this point, and other recipients of the reports will not be either. Indeed, the disclaimer on the reports presumably was included for the very purpose of avoiding confusion about their scope and purpose.

To allow censorship of information because the government determines that it is "confusing" or misleading is directly antithetical to the purposes of FOIA, which include furthering "citizens' right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, (1989) (internal quote omitted). Even in cases where the release of government records could confuse or mislead the public, the remedy is not secrecy but rather disclosure of more information that will clarify the state of affairs.

C.  **Defendants Have Provided No Justification for DoD's Redactions**

An agency receiving a FOIA request may refer it to another agency but does not escape responsibility for processing the request and defending any redactions or withholdings. *See, e.g.*, *Hall v. CIA*, 668 F. Supp. 2d 172, 182 (D.D.C. 2010). Summary judgment in favor of the agency is not appropriate where "the results of [its] referral of records … have not been explained …." *Skinner v. DOJ*, 744 F. Supp. 2d 185, 216 (D.D.C. 2010).

DoD made extensive redactions beyond those made by DOE. See Perez Decl., Exhibit B, Docket No. 20-5. According to Ms. Perez' Declaration (Docket No. 21-1, at ¶ 11), "NNSA withheld the portions marked in yellow …. The remaining redactions were made by the Department of Defense …." Defendants have not made any attempt to justify DoD's redactions, other than to refer to DoD's determination letter (Perez Decl., Exhibit C, Docket No. 20-6), which merely lists the FOIA exemptions that DoD applied. Nor have Defendants provided any justification to show that DoD's redactions are as narrow as possible to allow the disclosure of segregable non-exempt information.

Defendants have not provided any rationale or explanation for how Exemption 5 justifies DoD's redactions, which is particularly egregious in this case where State found no basis for redactions. Therefore, this redacted material must be released.

III.   **FOIA Exemption 6**

In its pleading for summary judgment, Defendants contend that the names of all those who helped prepare the 17 reports at issue here were properly withheld, citing various standards – that disclosure might harm the individuals involved, that injury and embarrassment might result from unnecessary disclosures of personally-identifying information, and that those

involved might be subject to unwarranted attention, scrutiny or harassment by persons with political, philosophical, or other objections to their mission.

Defendants' arguments are unpersuasive. Their purely theoretical "parade of horribles" if Plaintiff's motion is granted pales in comparison to the public's right to know if those who helped to prepare the reports had personal or institutional interests in the outcome of the policymaking that these reports were intended to inform, a circumstance that is a matter of legitimate public interest. In particular, the public should be able to determine if the contractors involved in preparing the reports had a financial stake – or at worst, conflict of interest – that might have influenced the information they provided to the government regarding the nation's nuclear posture.

Bechtel National Inc., for example, is a partner in the consortium of private contractors that operates Lawrence Livermore National Laboratory, which oversaw the preparation and distribution of the 17 reports at issue. Bechtel also was part of corporate contractor consortia operating a total of three other nuclear weapon sites responsible for research and development, weapon design, supplying nuclear fuel for weapons, assembling and dismantling bombs and forging internal components for nuclear weapons. Each site is eligible for bonuses from the government that represent a percentage of the site budgets, so increased workload and new programs can lead to higher bonuses. Therefore, the tone, content and substance of the information provided in the responsive records that are the subject of this lawsuit could provide an impetus for new profits by Bechtel. Thus, the public has a legitimate interest in learning if

Bechtel employees worked on the reports, and also in discerning what their corporate responsibilities were at the time this work occurred.

These are not idle concerns. Nuclear weapons contractors to the federal government have in fact used their unique positions in attempts to improve their financial positions in the past. For example, in November 2016, the Justice Department concluded that Bechtel National Inc. and Bechtel Corp. "improperly used federal contract funds to pay for a comprehensive, multi-year lobbying campaign of Congress and other federal officials."

And in 2014, an inspector general at the Energy Department stated in a public report that Sandia National Laboratory, then a wholly owned subsidiary of the Lockheed Martin Corporation, "provided the New Mexico Congressional Delegation with information that raised a concern about lobbying. Specifically, each year the New Mexico Congressional Delegation requested that SNL provide them with information on ongoing and future national security and science research. Included in this package was a 'Next Steps' or 'What Could Congress Do' section, which sometimes included funding requests or expressed an opinion on a Congressional matter."[2] Sandia was one of the three laboratories that helped prepare and disseminate the 17 reports at issue here.

Plaintiff is not engaged in a fishing expedition. It merely seeks to determine whether the type of conduct the Justice Department and inspector general highlighted might have occurred

---

[2] https://www.energy.gov/sites/prod/files/2014/11/f19/IG-0927.pdf
This investigation initiated by the Department of Energy's Office of the Inspector General resulted in a conclusion that Sandia National Laboratories, at the time a wholly owned subsidiary of Lockheed Martin, produced reports similar to those at issue in this FOIA lawsuit that constituted illegal lobbying. The reports generated by Sandia are similar to the documents at issue in this lawsuit because work on both was funded by the federal government with the belief they would be of use in consideration of nuclear weapons matters. The inspector general's investigation considered reports from Sandia that were requested by the New Mexico congressional delegation. The reports generated in response to those requests "sometimes included funding requests or expressed an opinion on a Congressional matter," a prohibited use of federal funds that had been designated for the specific purpose of creating nuclear weapons but instead were used to lobby, according to the inspector general's report. The records at issue in this lawsuit could be interpreted similarly. The Lockheed Martin subsidiary accused of illegal lobbying settled the

during the preparation of these reports, a matter of equal public interest. However, to do so, Plaintiff requires a full understanding of exactly who was involved in the preparation of the reports at issue and how their positions may have impacted their conclusions.

## IV.     FOIA Exemption 7(F)

Exemption 7(F) protects from disclosure "records or information compiled for law enforcement purposes [if release] could reasonably be expected to endanger the life or physical safety of any individual …." 5 U.S.C. § 552(b)(7). Defendants have not made any argument that the documents at issue were "compiled for law enforcement purposes." To the contrary, they were prepared in connection with a policy review. Because they fail the Exemption 7 "threshold" test, redaction under Exemption 7(F) is improper.

Alternatively, the 7(F) redactions are improper because DOE has previously released information that appears to be substantially similar. Defendants explain that the redacted "material consists of details about safety-related shut downs at various government facilities" and says this information could endanger workers at the facilities by revealing vulnerabilities to enemies of the United States. Defendants' Memo, at 11. But DOE has released information about these or similar shutdowns, for instance:

- Department of Energy Office of the Inspector General audit report "Follow-up on Nuclear Safety: Safety Basis and Quality Assurance at the Los Alamos National Laboratory" July 2015. https://www.energy.gov/sites/prod/files/2015/07/f24/A13AL046%20Issued%20Final%20Report%20LANL%20Nuclear%20Safety%20%207-16.pdf. DOE in this report identifies two critical sites that had been shut down for four and two years, respectively, and in great detail elaborates on unsafe conditions and the culture that caused them.

- Consent order between National Security Technologies LLC and DOE's Office of Enterprise Assessments over radiological contamination events at the Nevada National Security Site, June 14, 2016. https://www.energy.gov/sites/prod/files/2016/06/f33/NCO-

---

accusations by repaying $4.7 million to the federal government: https://www.justice.gov/opa/pr/sandia-corporation-agrees-pay-47-million-resolve-allegations-related-lobbying-activities

>2016-02%20NSTec%20Signed%20Consent%20Order%206-22-16.pdf. This consent order between the Department of Energy and a contractor describes in minute detail the steps that allowed more than 30 scientists to be exposed to airborne uranium, resulting in the shutdown of a facility where small scale tests of nuclear weapon components are conducted.

These are just two of at least 10 documents published by DOE in the past five years that provide details of safety-related shutdowns at government facilities.

"[A]n agency waives its right to claim a FOIA exemption for information that it has officially released in the public domain." *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 849 F. Supp. 2d 47, 59 (D.D.C. 2012) (citing *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)); *cf. Niagara v. Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) (applying this logic to material withheld pursuant to Exemption 4). A court may order disclosure "even over an agency's otherwise valid exemption claim" "when information has been 'officially acknowledged'" through prior disclosure. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

Were DOE legitimately concerned with the public safety implications of disclosing the details of the shutdowns at issue here, it presumably would not have publicly disclosed the details of these and similar shutdowns in the past, or it would have "classified" the information provided in these documents, rather than making the information available to those without security clearances. To the contrary, DOE's prior disclosure of such information demonstrates that the public safety concerns they now invoke are non-existent or trivial at best. The assertion instead appears to stem from a desire merely to keep this information away from the public, which has a vital interest in knowing of such actions that may be related to its safety.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

/s/
Peter Newbatt Smith
D.C. Bar #458244
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006-2606
202-481-1239
psmith@publicintegrity.org

Attorney for Plaintiff