# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR <br> PUBLIC INTEGRITY, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT <br> OF ENERGY, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 18-1173 (ABJ) |

## MEMORANDUM OPINION

On September 21, 2017, the Center for Public Integrity ("plaintiff"), submitted a request for documents to the National Nuclear Security Administration ("NNSA"), a semi-autonomous agency within the United States Department of Energy ("DOE"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Suppl. Compl. [Dkt. # 9] ¶ 7. The request sought all "reports produced by national laboratories for consideration in the upcoming Nuclear Posture Review." *Id*. On May 14, 2018, DOE issued a partial determination, stating that it had located seventeen documents responsive to the request. *Id*. ¶ 8. The seventeenth document would be withheld entirely by the agency, and the first sixteen were sent to the United States Department of State ("DOS") for review. *Id*. ¶¶ 8–9. On May 18, 2018, plaintiff filed this lawsuit against DOE and DOS, demanding disclosure of the documents. *See* Compl. [Dkt. # 1] ¶ 14, Demand for Relief.

On November 13, 2018, the government, through the United States Department of Defense ("DoD"), released the sixteen documents with redactions, claiming Exemptions 5, 6, and 7(F).

Defs.' Corrected Statement of Material Undisputed Facts [Dkt. # 21-3] ("Defs.' SUMF") ¶¶ 7, 11, 18–22.

On March 1, 2019, defendants moved for summary judgment, arguing that they have complied with their obligations under FOIA. Defs.' Mot. for Summ. J. [Dkt. # 20] ("Defs.' Mot."); Corrected Mem. in Supp. of Defs.' Mot. for Summ. J. [Dkt. # 21-2] ("Defs.' Mem."). Plaintiff opposed the motion and cross-moved for summary judgment on March 29, 2019. Pl.'s Cross-Mot. for Summ. J. [Dkt. # 22] ("Pl.'s Cross-Mot."); Pl.'s Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J. [Dkt. # 22] ("Pl.'s Mem.").

For the following reasons, the Court will grant defendants' motion for summary judgment in part and deny it in part, and it will deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

In 2017, based on directives from both Congress and the President, DoD started drafting an "updated Nuclear Posture Review . . . to determine the role of nuclear weapons in U.S. security strategy." Pl.'s Mem. at 1. Through its own investigation, plaintiff discovered that a number of national laboratories, "which are operated by contractors on behalf of the Department of Energy," had offered information relevant to the Nuclear Posture Review ("NPR"). *Id.*

On September 21, 2017, plaintiff submitted a FOIA request to NNSA seeking "[a]ll reports produced by national laboratories for consideration in the upcoming Nuclear Posture Review." Suppl. Compl. ¶ 7. On September 25, 2017, NNSA sent the request to three laboratories: the Los Alamos Field Office, the Livermore Field Office, and the Sandia Field Office. Defs.' SUMF ¶ 3.[1]

---

1     The Court cites to defendants' statement of undisputed facts only if plaintiff does not contest the fact at issue. *See* Pl.'s Statement Addressing Defs.' SUMF & Pl.'s Statement of Genuine Issues [Dkt. # 22-1] ("Pl.'s Resp. to Defs.' SUMF") at 1.

Defendants have asserted that these laboratories were the only NNSA laboratories involved in producing the reports called for by the FOIA request, and plaintiff does not dispute that fact. *Id.*

These laboratories found seventeen responsive documents, and they sent them to the NNSA's Office of General Counsel with several recommended redactions. Defs.' SUMF ¶ 4. The Office conducted a second-level review "to evaluate whether the recommended redactions were consistent with the provisions of the FOIA." *Id.* ¶ 5. The documents were also sent to the Office of Policy in the NNSA to review and to provide recommendations regarding the proposed redactions. *Id.* On March 28, 2018, NNSA received the Office of Policy's proposed redactions. Corrected Decl. of Delilah M. Perez in Supp. of Defs.' Mot. for Summ. J. [Dkt # 21-1] ("Perez Decl.") ¶ 9. The FOIA staff at NNSA compared all of the proposed redactions, and redacted information pursuant to FOIA Exemptions 5, 6, and 7(F). *Id.*

On May 14, 2018, DOE notified plaintiff that "it had located 17 documents responsive to the request and was withholding [D]ocument 17 in its entirety . . . ." Suppl. Compl. ¶ 8. Document 17 was withheld under Exemption 5 as protected by the deliberative process privilege. Perez Decl. ¶ 14. The other sixteen documents were sent to the Department of State for review. Defs.' SUMF ¶ 18. On May 17, 2018, plaintiff appealed the withholding of Document 17 to DOE's Office of Hearing and Appeals. Suppl. Compl. ¶ 12. The appeal was denied on May 29, 2018. *Id.*

On May 17, 2018, plaintiff submitted a FOIA request to the State Department, requesting the sixteen documents forwarded to it from DOE. Suppl. Compl. ¶ 16; Decl. of Eric F. Stein [Dkt. # 20-7] ("Stein Decl.") ¶ 5. The Department informed plaintiff on June 14, 2018, that it was processing the documents and asked if plaintiff wanted it to process the FOIA request. Stein Decl. ¶ 6. Plaintiff did not respond. *Id.*

On August 3, 2018, the State Department notified NNSA that it had no recommended "redactions but that review by DoD was necessary" because DoD "also had equities in the documents." Perez Decl. ¶ 22; Stein Decl. ¶ 8. NNSA "transferred the documents to DoD on August 7, 2018 "for [its] review and release determination." Defs.' SUMF ¶ 20, citing Perez Decl. ¶ 23. The department redacted additional information pursuant to Exemption 5 from the sixteen documents. Decl. of Mark H. Herrington [Dkt. # 24-1] ("Herrington Decl.") ¶ 4. On November 13, 2018, it produced the documents to plaintiff along with a letter explaining that information had been redacted under Exemptions 3, 5, 6, and 7(F) on November 13, 2018.[2] Ex. C to Perez Decl. [Dkt. # 20-6] at 1. After plaintiff filed suit, the Defense Department determined that additional information could be segregated and released, and it provided plaintiff with versions of the sixteen documents with fewer redactions on April 12, 2019. Herrington Decl. ¶ 4.

On March 13, 2020, the Court determined that *in-camera* review of the sixteen redacted documents would aid it in making a responsible, *de novo* ruling on defendants' claims of exemptions. *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). It ordered defendants to produce the unredacted versions of the documents for inspection. Min. Order (Mar. 13, 2020). Defendants complied with the order on March 17, 2020. *See* Min. Order (Mar. 20, 2020); Min. Order (Mar. 25, 2020).

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the

---

2   While the letter stated that redactions were made pursuant to Exemption 3, defendants have not moved for summary judgment arguing that their redactions were proper under this exemption. Furthermore, the declarations submitted by NNSA and DoD do not mention Exemption 3.

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Id.*, at 247–48. A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id*. at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (citation and internal quotation marks omitted).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630–31 (1982). This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). When an agency withholds documents or parts of documents, it must explain what it is withholding and specify the statutory exemptions that apply. *See Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973).

In this case, defendants argue that they: (1) conducted a reasonable search for records responsive to plaintiff's FOIA request; (2) properly invoked Exemptions 5, 6, and 7(F); and (3) complied with FOIA's segregability requirement. *See* Defs.' Mot.; Defs.' Mem. In its combined cross-motion for summary judgment and opposition, plaintiff stated explicitly that it does not contest the adequacy of the search performed by the agencies. Pl.'s Mem. at 1. Therefore, there is no dispute of fact as to the issue, and the Court need not address it. *See Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 105–06 n.1 (D.D.C. 2017), citing *Winston & Strawn, LLP v.*

*McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). The Court will address the remaining issues – the claimed exemptions and the segregability requirement – below.

I.  **Exemption 5**

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. The exemption encompasses "protections traditionally afforded [to] certain documents pursuant to evidentiary privileges in the civil discovery context[,]" including the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). FOIA "places the burden on the agency to sustain the lawfulness of specific withholdings in litigation." *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). Both NNSA and DoD have exempted information claiming that the deliberative process privilege applies to it. Perez Decl. ¶ 12; Herrington Decl. ¶ 4.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.* ("*Sears*"), 421 U.S. 132, 151 (1975). To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151

(D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy," and deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id*.

Plaintiff objects to defendants' invocation of Exemption 5 on two grounds: (1) the information is not deliberative; and (2) defendants have not sufficiently shown that disclosure would cause foreseeable harm. Pl.'s Mem. at 4–7. The Court will address each objection in turn.

### A. Deliberative

Plaintiff first argues that the information redacted is not deliberative because "[a]t least 15 of the 17 responsive documents carry a disclaimer on the first page stating[:] 'This paper does not provide policy recommendations. As an unclassified background paper, it is intended to help frame key issues, assemble relevant background information, and sketch out alternative pathways forward.'" Pl.'s Mem. at 5, citing Ex. 2. Plaintiff contends that the disclaimer means that in the absence of policy recommendations, the documents only transmit facts, and therefore, they are not deliberative.

Defendants respond that the information is deliberative for several reasons. First, the NNSA declarant, Delilah Perez, averred that the "information withheld . . . reveals the [g]overnment's deliberative process with allies on sensitive policy matters whose release could undermine the [g]overnment's ability to engage in future deliberations on the matter." Perez Decl. ¶ 12. She added:

> The NNSA information redacted pursuant to this Exemption also relates to recommendations about the United States' position with regard to the [International Atomic Energy Agency ("IAEA")]. The U.S. position on this matter is in flux and politically sensitive; release of this recommendation could harm the [g]overnment's deliberations as to how to approach this topic and confuse the public. Moreover, the IAEA is not discussed in the Nuclear Posture Review itself, and therefore this information is truly deliberative.

*Id*. ¶ 12.

Similarly, NNSA withheld Document 17 on the grounds that it contained an analysis of a specific country's nuclear capabilities. Perez Decl. ¶ 14. This analysis "had been presented to decision makers for inclusion in the final Nuclear Posture Review (NPR), but was ultimately rejected. The evaluation of that country was not included in the final NPR." *Id.*

DoD's declarant stated that "[t]he materials withheld pursuant to the deliberative process privilege are predecisional because they preceded finalization of the 2018 Nuclear Posture Review . . . . The documents are deliberative because they provide analysis, advice, and options to be considered by DoD when formulating the nuclear posture." Herrington Decl. ¶ 6. Specifically, the withheld information contained analyses regarding a variety of topics, including:

> [T]he best way to manage the U.S. nuclear stockpile; strategies for warhead modernization; hedging strategies to help reduce risk and avoid threats that otherwise may emerge over time, including geopolitical, technological, operational, and programmatic; possible messaging strategies to utilize both for deterrence of adversaries and assurance of allies; and geopolitical considerations concerning Russia, China, and North Korea.

*Id*. ¶ 8. Other parts of the redactions contained "alternative ways forward." *Id.* ¶ 10. While the reports do not recommend which pathway is optimal, they do propose several alternatives, which the agency purports is "itself advice":

> For example, as it is not an objective fact that there are exactly X number of options when deciding what the U.S. should do with its existing nuclear weapons or X number of options when deciding what the U.S. should do regarding the development of any future nuclear weapons, nor is it an

> objective fact what those options are, providing a list of options is advice and analysis to be considered by DoD when reaching a decision on the nuclear posture. The analysis contained in these sections detailed pros and cons of each alternative, again to aid in DoD's deliberative process.

*Id.*

Finally, the Defense Department declarant averred that: "The truly factual background information has been released to [p]laintiff. The portions that have been withheld relate to the analysis required to frame key issues and the considerations essential in deciding the pathway forward," Herrington Decl. ¶ 7, but "if the information was more analytical, such as predications about how China or Russia may act in the future, then the information was withheld as deliberative." *Id.* ¶ 9.

Based on the Court's *in-camera* review, as well as the information provided in the government's affidavits, the Court finds that the information is deliberative, and that defendants have not withheld purely factual information. The agencies withheld policy alternatives that were not ultimately adopted by the agency in the Nuclear Posture Review, as well as analyses of national security concerns related to foreign nuclear capabilities. The disclaimer that plaintiff relies upon states that each report is intended to "frame key issues" – which can be a first step in a deliberative process of selecting issues for presentation – and it also indicates that the purpose of each report is to outline "alternative pathways forward" – which, as defendants point out, is a form of advice. Herrington Decl. ¶¶ 7, 10; *see Sears*, 421 U.S. at 151 (the privilege's ultimate purpose is to prevent injury to the quality of agency decisions by allowing government officials freedom to debate alternative approaches in private). The reports lay out the pros and cons involved in a number of potential decisions, which is precisely what is meant by the "give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. Therefore, the Court finds that the exemption was properly invoked and the information properly withheld.

In addition, "where the factual information is inextricably connected to the deliberative material such that its disclosure would reveal, and harm, the deliberative process, the factual material itself is protected." *Cofield v. City of LaGrange, Ga.*, 913 F. Supp. 608, 616 (D.D.C. 1996), citing *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980).

Defendants have averred that they have released all the purely factual information they could without jeopardizing deliberations, Herrington Decl. ¶ 9; *see* Perez Decl. ¶ 20, and given the detail they have provided to support that statement and the presumption of good faith that attaches to agency declarations the Court finds that there is no additional factual information that can be disclosed.

### B. Foreseeable Harm

Plaintiff also challenges defendants' withholdings under Exemption 5 by pointing to the 2016 FOIA Improvement Act. *See* Pub. L. No. 114-185, 130 Stat. 538. It contends that the agencies have failed to satisfy the "foreseeable harm" standard. Pl.'s Mem. at 4–5. As amended, the statute now provides that "[a]n agency shall . . . withhold information under this section only if [] (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law[.]"[3] 5 U.S.C. § 552(a)(8)(A).

---

3      This standard was established in 2009. *See* S. Rep. No. 114-4, at 3 & n.8 (2015), citing Attorney General Eric Holder, *Memorandum for Heads of Executive Departments and Agencies, Subject: Freedom of Information Act* (Mar. 19, 2009); S. Rep. No. 114-4, at 7–8. Pursuant to the "foreseeable harm" standard, the Department of Justice would "defend an agency's denial of a FOIA request only if (1) the agency reasonably fores[aw] that disclosure would harm an interest protected by one of [FOIA's] statutory exemptions, or (2) disclosure [was] prohibited by law. U.S. Dep't of Justice, *Guide to the Freedom of Information Act* 25 (2009 ed.), https://www.justice.gov/archive/oip/foia_guide09/procedural-requirements.pdf (internal quotation marks omitted). By codifying this standard, Congress sought to establish a "presumption of openness" in FOIA. *See* H.R. Rep. No. 114-391, at 9 (2016); S. Rep. No. 114-4, at 3, 7.

11

Plaintiff argues that this provision requires agencies to make a specific showing that foreseeable harm will occur if the documents are disclosed in their entirety, and that defendants have failed to make the requisite showing because: (1) The documents were sent to DOS for review, and DOS did not recommend any redactions, and thus there can be no harm to the "government's ability to engage in future deliberations on policy matters" with other countries, Pl.'s Mem. at 5, citing Defs.' Mem. at 9; (2) there is no harm to candid discussion, because the reports were created by a committee and contained a disclaimer that the reports did not represent "official positions of the NNSA national laboratories," *id.* at 7; and (3) there is no substantial risk of public confusion. *Id.*, citing Defs.' Mem. at 9.

The Court finds that the record supports a finding that the agencies reasonably foresaw that disclosure of the redacted portions of the records could cause harm that Exemption 5 was meant to prevent.

The agencies have avowed that release of the information "could undermine the government's ability to engage in future deliberations on the matter" and cause confusion because "the information reflects opinions stated in apparent fact form about U.S. policy toward other countries." Perez Decl. ¶ 12. The withholdings also contain information regarding the IAEA, which was not included in the final Nuclear Posture Review, and the "U.S. position on this matter is in flux and politically sensitive; release of this recommendation could harm the [g]overnment's deliberations as to how to approach this topic and confuse the public." *Id.* ¶ 13. As stated above, Document 17 (which was withheld completely) pertains to an analysis of a country's nuclear capabilities and it was not included in the final NPR. *Id.* ¶ 14. Finally, DoD's declarant stated that "the final report discusses China, Russia, and North Korea and the geopolitical posture of each country at some length . . . . Any discrepancies between NNSA's analysis and the statements in

the final report that may exist could similarly confuse the general public as well as the governments of those countries regarding the United States' belief of their military posture, intentions, and actions." Herrington Decl. ¶ 12.

The Court finds that defendants have adequately explained that disclosure of the information would cause foreseeable harm. The information at issue is related to national security, and the agencies should be free to discuss proposals internally that did not ultimately find their way into the final policy statement of the agency – the Nuclear Posture Review. Furthermore, if disclosure was ordered, deliberations on sensitive nuclear policy matters would be impaired, which goes to the very heart of the deliberative process privilege.

Plaintiff's argument that the fact that the State Department did not make any redactions suggests that there would be no harm to this country's ability to engage in future deliberations on these matters with its allies is beside the point. Pl.'s Mem. at 5–6. The State Department had no redactions of its own, but it specifically suggested that the Defense Department review the documents. Stein Decl. ¶ 8. This agency was sensitive to the gravity of national security issues contained in the reports, and it exercised caution in the release of predecisional material concerning nuclear policy.

Thus, the Court finds that the agencies have properly invoked Exemption 5, and it will grant defendants' motion on this issue.

## II. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989), quoting 5 U.S.C. § 552(b)(6). "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of

an intimate nature[.]" *Id.* at 875. The relevant inquiry is "the extent of the interference with privacy that would be caused by disclosure of the name, address," or other personal information. *Id.*

Defendants state that the information withheld under Exemption 6 "are contractor names and email addresses. The individuals' names are of non-executive employees who acted in furtherance of their contractor employment circumstances." Perez Decl. ¶ 16. However, "the names of the laboratory directors, who are all high-level decision makers for the various contractors, were released." *Id.* ¶ 17.

When considering the validity of redactions under Exemption 6, the "threshold question is whether the requested information is contained in a personnel, medical, or similar file." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002), citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982). "Similar files" encompasses "not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Judicial Watch*, 449 F.3d at 152–53, quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987). The parties do not dispute that the information at issue falls within that category.

Next, the Court must consider whether disclosure of the information at issue – the names and email addresses of non-executive employees of the laboratories – would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This inquiry involves a two-step process. "The first step . . . requires determining that disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review* ("*AILA*"), 830 F.3d 667, 673–74 (D.C. Cir. 2016), quoting *Norton*, 309 F.3d at 33 (internal quotation marks omitted). The term "substantial" merely means "anything

greater than a *de minimis* privacy interest," *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229–30 (D.C. Cir. 2008), and the standard to determine whether a privacy interest is substantial "is not very demanding." *Id.* at 1230; *see Norton*, 309 F.3d at 35, 37 (finding that even a "speculative" risk of invasion of privacy may be enough to establish a substantial privacy interest).

If the answer is yes, "then the court must 'balance' the individual's right of privacy against the public interest in disclosure." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), quoting *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994), quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989) (emphasis in original).

Here, the Court finds that there is a substantial interest at stake in the release of the names and email addresses of the low-level employees. Defendants did not release the names and email addresses of "non-executive employees who acted in furtherance of their contractor employment duties[,]" Defs.' Mem. at 8, because "[r]elease of their names would likely cause an unwarranted invasion of their privacy because they could be subjected to unwanted attention, scrutiny or harassment by persons or entities harboring political, philosophical or other objections to the mission and operations of the management and operation contracts." Perez Decl. ¶ 16. The Court agrees; such a disclosure would allow the general public to associate them with the planning of possibly controversial nuclear policy and their work at NNSA's laboratories, which relates to national security issues.

Plaintiff contends that this privacy interest is outweighed by the public interest in the disclosure of the information. It argues that the public should be informed of the identity of individuals involved in the preparation of these reports to determine whether certain government contractors have a financial stake in the outcome or a conflict of interest that may have influenced the information provided to the government. Pl.'s Mem. at 9. But, upon *in-camera* review of the reports, it appears that all of the names that were redacted were employees at the laboratories that wrote the reports, and all of the email addresses were government email addresses. Furthermore, the agency averred that it released the names of the individuals who were responsible for major decisions and who could have a financial interest in the nuclear policy decisions embedded in the final Nuclear Posture Review. *See* Perez Decl. ¶ 17; Defs.' Reply in Supp. of Summ. J. [Dkt. # 24] ("Defs.' Reply") at 4. In the end, plaintiff has not explained how the names of low-level employees, with no decision-making authority, will expose the operations of the government. *See Fed. Labor Relations Auth.*, 510 U.S. at 505 (Ginsburg, J., concurring).

Thus, the Court finds that the interest in keeping these employees' names private outweighs any public interest. The employees' names may be redacted pursuant to Exemption 6. However, the Court finds that the names of the laboratories associated with each individual are not appropriately withheld under this Exemption. Therefore, that portion of an email address in question that consists of an individual's name may remain redacted, but the portion after the "@" symbol that identifies the lab must be disclosed. (*E.g.*, [redacted name] @llnl.gov, or lanl.gov).

### III.    Exemption 7(F)

"To fall within FOIA Exemption 7, 'documents must first meet a threshold requirement: that the records were compiled for law enforcement purposes.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015), quoting *Pub. Emps. For Envtl.*

*Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.* ("*PEER*"), 740 F.3d 195, 202–03 (D.C. Cir. 2014). If a record satisfies Exemption 7's threshold test, an agency may only withhold the record pursuant to Exemption 7(F) if the record's release "could reasonably be expected to endanger the life or physical safety of any individual[.]" 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) "may be invoked to protect 'any individual' reasonably at risk of harm[,]" not merely law enforcement personnel. *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006), quoting 5 U.S.C. § 552(b)(7)(F).

NNSA[4] has redacted just two paragraphs from the stack of records pursuant to this exemption. The information "consists of details about safety-related shut downs at various government facilities." Perez Decl. ¶ 19. The government claims that disclosing this information would "reveal[] detailed information about how these facilities have been subject to safety-related shut downs" and it "would show a level of detail about the vulnerability that could cause the nation's enemies to attempt to exploit the vulnerabilities further." *Id.* Finally, the agency avers that "[r]evealing this information could reasonably be expected to endanger the lives of the employees who work at those facilities." *Id.*

Plaintiff contends that defendants have not made any argument that the information at issue were "compiled for law enforcement purposes" and so, they fail the Exemption 7 threshold test. Pl.'s Mem. at 11. Defendants, in response, state that "law enforcement" can include "activities associated with preventing breaches to national security." Defs.' Opp. at 5, citing *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982).

Based on the Court's *in-camera* inspection of the information, the Court finds that the information falls within Exemption 7(F). "'Law enforcement entails more than just investigating

---

4     It appears that DoD only made redactions pursuant to Exemption 5.

and prosecuting individuals,'" *Elec. Privacy*, 777 F.3d at 522, quoting *PEER*, 740 F.3d at 203, it "'includes . . . proactive steps designed to prevent criminal activity and to maintain security.'" *Id.*, quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring). Because the information relates to security concerns at nuclear facilities, and the declarants have credibly averred that disclosure could make these facilities targets of foul play and endanger the individuals who work there or the public at large, the Court finds that the information was compiled for law enforcement purposes, and it falls within the exemption. *See also Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d 65, 83 (D.D.C. 2017) (finding that DOE was entitled to redact information that would reveal the "vulnerabilities" of "sensitive governmental programs" that "relate to protection of nuclear materials, detection and sensing foreign nuclear weapon proliferation and nuclear defense risks" under Exemption 7(F)). However, defendants should keep in mind that future affiants should provide more information regarding when, by whom, and why the information was "compiled" to show how the information falls within Exemption 7 in general, and not simply rely on the ability to satisfy subsection (F).

Plaintiff alternatively argues that DOE has already released information regarding "shutdowns" and so it has waived its right to claim a FOIA exemption. Pl.'s Mem. at 11–12. A FOIA plaintiff may compel disclosure of information "even over an agency's otherwise valid exemption claim" if the government previously "officially acknowledged" the information. *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 620 (D.C. Cir. 2011). The D.C. Circuit has established a "strict test" to be applied to claims of official disclosure. *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011), quoting *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). Information is officially acknowledged by an agency when: (1) "the information requested [is] as specific as the information previously released," (2) the requested information "match[es] the

information previously disclosed," and (3) the requested information was already "made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

Plaintiff points to two public documents that it contends qualifies as "official acknowledgment": (1) A July 2015 Audit Report issued by the Department of Energy Office of Inspector General entitled "Follow-up on Nuclear Safety: Safety Basis and Quality Assurance at the Los Alamos National Laboratory," *available at* https://www.energy.gov/sites/prod/files/2015/07/f24/A13AL046%20Issued%20Final%20Report%20LANL%20Nuclear%20Safety%20%207-16.pdf; and (2) a June 14, 2016 Consent Order Incorporating Agreement Between the U.S. Department of Energy, the National Nuclear Security Administration, and National Security Technologies, LLC, *available at* https://www.energy.gov/sites/prod/files/2016/06/f33/NCO-2016-02%20NSTec%20Signed%20Consent%20Order%206-22-16.pdf. *See* Pl.'s Mem. at 11–12.

These public documents do not meet the strict test of official acknowledgment, because the information requested does not match the information publicly disclosed. The information contained in the public sources does not overlap with the information redacted in the reports. Furthermore, the public documents that plaintiff referenced are not related to the Nuclear Posture Review, and defendants have averred that the information in the reports that was redacted under this exemption has not been publicly released. Decl. of John Weckerle [Dkt. # 24-2] ("Weckerle Decl.") ¶ 8. Thus, defendants have not waived their right to claim a FOIA exemption over the requested information. The Court will grant defendants' motion as to this issue.

## IV. Segregability

The Court must make a segregability determination, even if not raised by the plaintiff. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). While agencies must provide a detailed justification for withholdings, the Court will give a presumption of compliance to the agency in segregating material, *see Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), but the plaintiff may overcome this by presenting evidence to the contrary. *Sussman*, 494 F.3d at 1117. Plaintiff has not provided any such evidence. The Court finds that "there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information." Perez Decl. ¶ 20; *see* Herrington Decl. ¶ 4.

## CONCLUSION

For the reasons stated, the Court will grant the government's motion for summary judgment in part and deny it in part, and it will deny plaintiff's cross motion for summary judgment.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: April 6, 2020